UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CURTIS BROWN,


                                    Plaintiff,

                                                            <u>DECISION AND ORDER</u>

                                                            02-CV-6666L


              v.

NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES,
ELMIRA CORRECTIONAL FACILITY,
NEW YORK STATE OFFICE OF THE STATE
COMPTROLLER,
NEW YORK STATE DEPARTMENT OF CIVIL
SERVICES,
DANNY STATE,
SAM KARAM,
LIEUTENANT GEORGE MARTIN,
NICK MARINO,
MARTY BAILEY,
SERGEANT GRAY,
DANNY LEONARD,
WILLIAM BEAM,
SERGEANT KEOUGH,
in their official and individual capacities,



                                    Defendants.
_____


        Plaintiff, Curtis Brown, commenced this action against his employer, the New York State

Department of Correctional Services ("DOCS"), and several other institutional and individual

defendants, alleging that he has been discriminated against in a number of ways on account of his race.  Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## BACKGROUND

Plaintiff, an African-American male, has been employed with DOCS as a Correction Officer ("C.O.") since 1988.  He has worked at Elmira Correctional Facility ("Elmira") since 1995.

Plaintiff alleges that from early 2001 to the present, he has been subjected to severe and continual harassment and discrimination by his white coworkers.  The specific incidents of harassment and intimidation alleged by plaintiff comprise a long list and will not be set forth in detail here, although particular incidents will be referred to as necessary.  What follows is a brief summary of the factual and procedural background of this case.

On April 10, 2001, plaintiff filed a charge with the New York State Division of Human Rights ("SDHR"), alleging "constant and unrelenting racial harassment" by white C.O.s, "both on the job and outside the facility." Complaint Ex. A ¶ 2.  Plaintiff filed a second administrative charge in August 2001, alleging that in addition to continued racial harassment, he had been subjected to retaliation by other C.O.s because of his April 10 SDHR complaint.  Complaint Ex. B.  A third SDHR charge followed in January 2002, alleging further incidents of harassment.  Complaint Ex. C.

As stated, plaintiff alleges that throughout this period, he was subjected to relentless harassment by his white coworkers, including not only verbal abuse but in some instances physical violence, including, on one occasion, a white C.O., Mark Bartsch, wrapping a steel chain around plaintiff's neck. Plaintiff's Aff. ¶ 14(n). Plaintiff alleges that he continually complained about these acts to his supervisors, but that they essentially ignored his complaints.

Plaintiff also alleges that he has been subjected to discipline in retaliation for his complaints. In particular, plaintiff was suspended without pay for three months in March 2002, and for ten days in June 2002, after being involved in altercations with white C.O.s. Plaintiff alleges that both of these suspensions were unjustified and that the altercations were initiated by the white C.O.s.

Plaintiff filed the complaint in this action in December 2002. Defendants include "New York State Department of Correctional Services, Elmira Correctional Facility," the New York State Comptroller's Office, the New York State Department of Civil Service (collectively "institutional defendants"), and nine individual defendants, each of whom is a white employee of DOCS who worked at Elmira at the time of the relevant events.

Plaintiff asserts eleven causes of action:  (1) a claim of race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, based on a theory of hostile work environment; (2) a claim of unlawful retaliation for plaintiff's exercise of his rights under Title VII; (3) a claim of race discrimination under 42 U.S.C. § 1981; (4) a retaliation claim under § 1981; (5) a claim alleging an amalgam of violations and claims under the Fourteenth Amendment, §§ 1981 and 1983, and Title VII; (6) a retaliation claim under § 1983; (7) a race discrimination claim under the New York State Human Rights Law ("HRL"), Exec. L. § 296; (8) a retaliation claim under the

HRL; (9) a claim that defendants acted, in some unspecified manner, "negligently, recklessly or carelessly, and/or with callous indifference toward Plaintiff," Complaint ¶ 62; (10) a claim alleging negligent hiring and supervision of the individual defendants; and (11) what appears to be either a breach of contract claim, or a claim of detrimental reliance, against what plaintiff describes as the "defendant entities," presumably meaning the institutional defendants.  Complaint ¶¶ 69-73.

With respect to each cause of action, the complaint seeks "in excess of $10,000,000.00, in back pay, front pay, benefits of employment, damages, compensatory damages, punitive damages, costs, interest and attorney's fees."  Complaint at 10-12.  Plaintiff also seeks a declaration that defendants willfully violated his rights, and an order enjoining defendants from continuing to violate his rights.

**DISCUSSION**

**I. Claims against Elmira Correctional Facility, the Comptroller's Office, and Civil Service**

Plaintiff's claims against Elmira Correctional Facility, the New York State Comptroller's Office, and the Department of Civil Service must be dismissed on the ground that those parties are not proper defendants in this suit, as none of them is plaintiff's "employer."  There are not even any allegations concerning the latter two parties, and although plaintiff is employed *at* Elmira, it is clear that he is employed *by* DOCS.  *See Ullah v. NYDOCS*, No. 00 Civ. 9506, 2002 U.S. Dist. LEXIS 11773, at *2 n. 2 (S.D.N.Y. June 26, 2002) ("Sing Sing Correctional Facility is not a proper defendant and is also dismissed, as plaintiff's employer is NYDOCS and not the individual

correctional facility") (citing *Richardson v. N.Y.S. DOCS*, No. 97 Civ. 0818, 1999 U.S. Dist. LEXIS

1432, at *1 (W.D.N.Y. Jan. 29, 1999)); *see also Alfano v. Costello*, 294 F.3d 365, 369 (2d Cir. 2002)

(describing DOCS as plaintiff C.O.'s employer).


## II. Claims under 42 U.S.C. § 1981

Plaintiff's third, fourth, and fifth causes of action all assert claims under § 1981. That statute

guarantees to "[a]ll persons within the jurisdiction of the United States ... the same right in every

State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full

and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed

by white citizens ... ." 42 U.S.C. § 1981(a).

The Supreme Court has made clear, however, that "the express cause of action for damages

created by § 1983 constitutes the *exclusive* federal remedy for violation of the rights guaranteed in

§ 1981 by state governmental units ... ." *Jett v. Dallas Independent School District*, 491 U.S. 701,

733 (1989) (quoted in *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004)) (alteration

in original).[1] Plaintiff's claims against the institutional defendants under § 1981 must therefore be

---

[1]Subsection (c) of § 1981, which was added to the statute in 1991, provides that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." Although not discussed by plaintiff–who cites no authority of any kind in support of his argument that "Sect. 1981 claims may be brought against the State ...," Plaintiff's Mem. (Dkt. #46) at 27)– "the circuits are split on whether subsection (c) creates a private cause of action against state actors, thus overruling the Supreme Court's decision in *Jett*." *Arendale v. City of Memphis*, 519 F.3d 587, 596 (6th Cir. 2008) (citing cases and concluding that the 1991 amendments did not overrule *Jett*).

"[T]he Second Circuit has not made an express finding on this issue." *M.O.C.H.A. Society, Inc. v. City of Buffalo*, No. 98-CV-99, 2007 WL 3354211, at *5 (W.D.N.Y. Nov. 9, 2007) (finding it unnecessary to decide issue on the facts before the court). It appears, however, that the majority of the circuit courts that have addressed the issue have held that *Jett* remains

(continued...)

dismissed.

That bar, however, does not apply to individual defendants, who "may be held liable under §§ 1981 and 1983 for certain types of discriminatory acts, including those giving rise to a hostile work environment." *Patterson*, 375 F.3d at 226. "A plaintiff may maintain a § 1981 claim against an individual defendant as long as the plaintiff can demonstrate some affirmative link to causally connect the actor with the discriminatory action." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000) (internal quotes omitted). In other words, a "claim seeking personal liability under section 1981 must be predicated on the actor's personal involvement." *Id.*

In addition, "[s]ection 1981 provides a cause of action for race-based employment discrimination based on a hostile work environment." *Id.* at 69. As explained in Part VIII, *infra*, I find that plaintiff has presented enough evidence to give rise to a genuine issue of fact about whether he was subjected to a hostile work environment on account of his race.

In addition, plaintiff has alleged personal involvement on the part of each of the individual defendants with respect to that claim. Each defendant is alleged to have directly participated in the harassing behavior giving rise to the hostile work environment, except for defendant Sergeant Keough, who is alleged to have either personally witnessed the harassment of plaintiff or received direct complaints from plaintiff about that harassment, and done nothing in response. *See* Plaintiff's

---

[1](...continued)

good law, *see Arendale*, 519 F.3d 596-98; *Pittman v. Oregon, Employment Dep't*, 509 F.3d 1065, 1069 (9th Cir. 2007) (discussing earlier Ninth Circuit case law concluding that *Jett* has been overruled by Congress, but noting that "[a]ll of the other circuits to reach the question have held that the 1991 amendments and the addition of subsection (c) did not overrule *Jett*").

In light of that weight of authority, I conclude, as has another district court from within this circuit, that "[t]his court, in the absence of controlling [Second Circuit] authority to the contrary, will not deviate from the Supreme Court's analysis of § 1981 in Jett." *Bond v. City of Middletown*, 389 F.Supp.2d 319, 328 (D.Conn. 2005).

Affidavit (Dkt. #43) ¶¶ 6, 14(d), 14(e).   That is enough to satisfy the personal-involvement requirement.  *See Hawkins v. County of Oneida*, 497 F.Supp.2d 362, 377 (N.D.N.Y. 2007) (denying motion to dismiss C.O.'s § 1981 hostile-work-environment claims against sergeant who was present when coworker made racist and racially charged remarks toward plaintiff, and against lieutenant to whom plaintiff complained about racist remarks and treatment).

### III. Claims under 42 U.S.C. § 1983

Although, as stated, § 1983 provides the exclusive federal remedy for state governmental units' violations of the rights guaranteed in § 1981, plaintiff's claims under § 1983 in this action cannot be sustained.  First, to the extent that plaintiff attempts to assert such claims against arms of the state or state employees in their official capacity, such claims are barred by the Eleventh Amendment.  *See Dube v. State Univ. of New York*, 900 F.2d 587, 594-95 (2d Cir. 1990) (recognizing that § 1983 does not abrogate the states' Eleventh Amendment immunity), *cert. denied*, 501 U.S. 1211 (1991).

To the extent that plaintiff seeks to pursue § 1983 claims against the individual defendants, such claims fail because there is no showing here of any state action.

> The terms of § 1983 make plain two elements that are necessary for recovery.  First, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States.  Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory."  This second element requires that the plaintiff show that the defendant acted "under color of law."

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970) (footnote omitted).

"[M]ere employment by the state does not mean that the employee's every act can properly be characterized as state action," however. *Patterson v. County of Oneida*, 375 F.3d 206, 230 (2d Cir. 2004); *see also Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir. 1996) ("Mere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law"), *cert. denied*, 520 U.S. 1155 (1997).

Harassment by a state employee's coworkers, then, typically will not satisfy the state action requirement. *See, e.g., Kern*, 93 F.3d at 43 (district court properly dismissed plaintiff's § 1983 claim against supervisor based on finding that supervisor was not acting under the color of state law when he harassed and assaulted plaintiff); *Noland v. McAdoo*, 39 F.3d 269, 271 (10th Cir. 1994) (defendant's harassing conduct while he was plaintiff's coworker was not actionable where there was no allegation that defendant acted with state authority).  I see no evidence in the record before me that would support a finding that the alleged harassment in this case was carried out under color of state law.

In addition, to the extent that plaintiff attempts to assert a retaliation claim under § 1983, such a claim fails because plaintiff has not shown that he engaged in any speech protected under § 1983. Plaintiff's complaints to his supervisors related to alleged discrimination and harassment on account of his race–in other words, to violations of Title VII.  Title VII provides the exclusive remedy for retaliation for such complaints. *Weems v. City of Columbus, Ohio*, No. 2:05-CV-87, 2006 WL 2640636, at *11 (S.D.Ohio Sept. 13, 2006); *Regan v. Township of Lower Merion*, 36 F.Supp.2d 245, 249 (E.D.Pa. 1999); *Gamper v. State of Alabama Dep't of Corrections*, 968 F.Supp. 1483, 1485 n. 1 (M.D.Ala. 1997).

It is true that "[a] plaintiff may, however, pursue a remedy under Section 1983 as well as under Title VII when the defendant's conduct violates both Title VII and a separate constitutional right." *Joyner v. School Dist. of Philadelphia*, 313 F.Supp.2d 495, 501 (E.D.Pa. 2004) (quoting *Regan*, 36 F.Supp.2d at 249).   Plaintiff has not alleged a violation of any such "separate constitutional right," however.

Under some circumstances, a public employee may assert a retaliation claim under § 1983 by showing that he was subjected to an adverse employment action for having spoken out about a matter of public concern, in violation of his rights under the First Amendment.  *See Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008).  To determine whether the plaintiff's speech addressed a matter of public concern, the court should look to "whether the speech was calculated to redress personal grievances or whether it had a broader public purpose."  *Hoyt v. Andreucci*, 433 F.3d 320, 330 (2d Cir. 2006).

A public employee's complaints to his supervisors about discrimination or harassment typically do not meet the "public concern" standard.  *See Connick v. Myers*, 461 U.S. 138, 147-48 (1983) (simple "employee grievances" are not matters of public concern); *see, e.g.*, *Howard v. City of New York*, No. 02 Civ. 5817, 2008 WL 2756328, at *1 (S.D.N.Y. July 15, 2008) (plaintiff's allegations did not suggest that plaintiff's complaints of discrimination were motivated by the "broader public purpose" of assisting others as opposed to a desire to "redress personal grievances") (quoting *Lewis v. Cowen*, 165 F.3d 154, 163-64 (2d Cir.), *cert. denied*, 528 U.S. 823 (1999)); *Coles v. Moore*, No. 3:04-cv-1623, 2006 WL 2790436, at *4 (D.Conn. Sept. 25, 2006) ("That Coles' complained of treatment that could be construed as unconstitutional discrimination does not transform Coles' [administrative] complaint [alleging age and national-origin discrimination] into

speech on an issue of public concern") (citing *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993), *cert. denied*, 510 U.S. 1164 (1994)).

In the case at bar, plaintiff's complaints to his supervisors and his SDHR complaints dealt with his personal grievances concerning discrimination and harassment directed against him on account of his race. That speech did not relate to matters of public concern, and therefore it cannot provide the predicate for a § 1983 retaliation claim.

## IV. Claims for Damages against DOCS

Claims for damages against New York State, any arm of the state, and state officials in their official capacity (which are in effect claims against the state), are, in general, barred by the Eleventh Amendment. *Pittman v. Oregon, Employment Dep't*, 509 F.3d 1065, 1072-74 (9th Cir. 2007); *Keri v. Board of Trustees of Purdue Univ.*, 458 F.3d 620, 640-41 (7th Cir. 2006), *cert. denied*, 127 S.Ct. 1331 (2007); *see also Pikulin v. City Univ. of New York*, 176 F.3d 598, 600-01 (2d Cir. 1999) (vacating judgment for defendant university where there was an insufficient basis on which to conclude that university was an arm of the state, and therefore sheltered by Eleventh Amendment immunity).

That rule does not apply to claims brought under Title VII, however. The Supreme Court has held that Congress, by amending Title VII in 1972 to include state and local governments as "employers," expressed a clear intention to abrogate the states' Eleventh Amendment immunity from suit under Title VII. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 449 n. 2 (1976). Therefore, as the Second Circuit has noted, "a state and its agencies have been subject to suit under Title VII since 1972 and have no Eleventh Amendment immunity" in Title VII actions. *Davis*, 802 F.2d 638, 639 n. 1 (2d.

Cir. 1986).  *See also Richardson v. New York State DOCS*, 180 F.3d 426, 437 (2d Cir. 1999)

(addressing merits of C.O.'s Title VII claim against DOCS).

Except for plaintiff's Title VII claims, then, all of plaintiff's claims for damages against

DOCS must be dismissed.  *See Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002); *Santiago v. New*

*York State DOCS*, 945 F.2d 25, 28 n. 1 (2d Cir. 1991), *cert. denied*, 502 U.S. 1094 (1992); *Abascal*

*v. Fleckenstein*, No. 06-CV-349, 2008 WL 3286353, at *10 (W.D.N.Y. Aug. 7, 2008); *Murphy v.*

*West*, 533 F.Supp.2d 312, 317 (W.D.N.Y. 2008).


## V. Constructive Discharge Claims

Several of plaintiff's causes of action allege that "[d]efendants have ... constructively

discharged" plaintiff.  *See* Complaint ¶¶ 40, 46, 59.  To the extent that plaintiff seeks to pursue a

claim of constructive discharge, these causes of action must be dismissed.

As the term "constructive discharge" implies, a *sine qua non* of such a claim is that the

plaintiff's employment with the defendant has ended.  *See Terry v. Ashcroft*, 336 F.3d 128, 152-53

(2d Cir. 2003) ("An employee is constructively discharged when his employer, rather than

discharging him directly, intentionally creates a work atmosphere so intolerable that he is *forced to*

*quit* involuntarily") (emphasis added); *accord Mack v. Otis Elevator Co.*, 326 F.3d 116, 128 (2d

Cir.), *cert. denied*, 540 U.S. 1016 (2003); *see also Pennsylvania State Police v. Suders*, 542 U.S.

129, 142 (2004) ("Under the constructive discharge doctrine, an employee's reasonable decision *to*

*resign* because of unendurable working conditions is assimilated to a formal discharge for remedial

purposes") (emphasis added).

In the case at bar, it is undisputed that plaintiff is still employed by DOCS.  *See* Complaint ¶ 6; Plaintiff's Aff. (Dkt. #43) ¶ 2.  He therefore cannot assert a claim of constructive discharge.  *See Tavoloni v. Mount Sinai Medical Center*, 198 F.3d 235 (table), 1999 WL 972656, at *2 (2d Cir. 1999) (affirming, without discussion, district court's dismissal of constructive discharge claim where plaintiff was still employed by defendant).[2]

## VI. Claims under State Law

Plaintiff's claims under New York law–regardless of the theory or statute on which they are premised–must also be dismissed.  As explained in *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 124-25 (1984), the Eleventh Amendment deprives federal courts of jurisdiction over claims for injunctive relief against state officials based on state law.  *See also Bad Frog Brewery, Inc. v. New York State Liquor Auth.*, 134 F.3d 87, 93 (2d Cir. 1998) ("It is well settled that federal courts may not grant declaratory or injunctive relief against a state agency based on violations of state law").

That bar does not apply to claims for damages against individual state officials or employees.  "The jurisdictional limitation recognized in *Pennhurst* does not apply to an individual capacity claim seeking *damages* against a state official, even if the claim is based on state law." *Bad Frog Brewery*, 134 F.3d at 102.  *See also Martinez v. Sanders*,  No. 02 CIV.5624, 2004 WL 1234041, at *8

---

[2]In response to defendants' motion, plaintiff asserts that "a reasonable person in Plaintiff [sic] position would have felt compelled to resign ... ."  Plaintiff's Mem. at 26.  If a reasonable person in plaintiff's position would truly have felt "compelled" to resign, and plaintiff did not resign, the apparent implication is that plaintiff is *not* a reasonable person, or at least that he did not act reasonably in this instance.  The Court is aware of no authority, however, that a plaintiff who is still employed by the defendant may pursue a constructive discharge claim by arguing that he "unreasonably" chose not to resign.

(S.D.N.Y. June 3, 2004) ("as for the free speech claim premised on state constitutional law, Plaintiff may only recover monetary damages against Defendant in his individual capacity").

That exception does not save any of plaintiff's state law claims, however.  As to plaintiff's claims under the HRL, § 297(9) of the HRL provides that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction."  That right is waived, however, if the claimant files a complaint with any state or local human rights commission, unless:  (1) the agency has dismissed the complaint for administrative convenience; (2) there is untimeliness on the part of the agency; or (3) the claimant's election of an administrative remedy is annulled.  *Id.*; *see Britton v. The Gleason Works*, No. 07-CV-6506, 2008 WL 3413902, at *3 (W.D.N.Y. Aug. 8, 2008).

In the case at bar, plaintiff first filed an administrative complaint with the SDHR in April 2001.  Complaint Ex. A.  There is no basis in the record for applying any of the exceptions to the election-of-remedies rule.  Plaintiff's only argument in this regard is that he has received a right-to-sue letter from the federal Equal Employment Opportunity Commission.  That has nothing to do with the election-of-remedies provision, which bars plaintiff's HRL claims in this action.  *See Janneh v. Regal Entertainment Group*, Not Reported in F.Supp.2d, 2007 WL 2292981, at *1 (N.D.N.Y. Aug. 6, 2007) (noting that plaintiff's administrative complaint had been dismissed, and that the EEOC had issued plaintiff a right-to-sue letter, and dismissing plaintiff's HRL claims for lack of subject matter jurisdiction based on § 297(9)).

Plaintiff's ninth cause of action alleges that "[d]efendants had a duty not to act negligently, recklessly or carelessly, and/or with callous indifference toward Plaintiff," and that they breached that duty.  Complaint ¶¶ 62, 63.  Plaintiff does not allege the particular nature of that duty, however,

nor has he explained the manner in which it was breached, or by whom.  I see no basis for such a claim.

Plaintiff's tenth cause of action alleges negligent hiring and supervision of the individual defendants.  By its nature, then, this claim must be asserted against the institutional defendants.  As stated above, such claims are barred by the Eleventh Amendment.  *See, e.g.*, *Doe v. Norwalk Comm. Coll.*, No. 3:04-cv-1976, 2007 WL 2066496, at *6 (D.Conn. July 16, 2007) (dismissing state law claims of negligent retention and supervision as barred by Eleventh Amendment); *Phipps v. New York State Dep't of Labor*, 53 F.Supp.2d 551, 558 (N.D.N.Y. 1999) (same).

Plaintiff's eleventh cause of action alleges that the "defendant entities extended offers of compensation to Plaintiff, on account of his employment," that defendants also "represented to Plaintiff ... that Plaintiff would not be treated in a discriminatory fashion on account of his race and color," and that they "breach[ed] ... these representations and commitments."  Complaint ¶¶ 70-73.  Although it is difficult to decipher the exact nature of this claim, it appears to assert a breach of plaintiff's employment contract with the state.   Such claims are also barred by the Eleventh Amendment.  *See, e.g.*, *Sarkissian v. West Virginia Univ. Bd. of Governors*, No. 1:05CV144, 2007 WL 1308978, at *10 (N.D.W.Va. May 3, 2007) (dismissing, on Eleventh Amendment grounds, public employee's claim against state agency for breach of employment contract); *Zhao v. State University of New York*, 472 F.Supp.2d 289, 320-21 (E.D.N.Y. 2007) ("any breach of contract claims against Dr. Bateman [in her capacity as a state university official] are barred by the Eleventh Amendment").

**VII. Title VII Claims against Individual Defendants**

Plaintiff's Title VII claims against the individual defendants must be dismissed.  As plaintiff acknowledges, individuals may not be held personally be liable under Title VII.  *Patane v. Clark*, 508 F.3d 106, 110 (2d Cir. 2007); *Schiano*, 445 F.3d at 608 n. 8; *Patterson*, 375 F.3d at 226.


**VIII. Title VII Hostile-Work-Environment Claim against DOCS**

"An actionable discrimination claim based on hostile work environment ... is one for which 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment ... .'"  *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 240 (2d Cir. 2007) (quoting *Brennan v. Metropolitan Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999) (additional internal quote omitted)).  "The determination of hostility depends on whether a reasonable person would find the work environment to be hostile and whether plaintiff[] subjectively perceived it to be so."  *Kassner*, 496 F.3d at 240.  Plaintiff need not demonstrate that the discriminatory conduct rendered his job "unendurable" or "intolerable," but only that "the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse*."  *Whidbee*, 223 F.3d at 69 (quoting *Torres v. Pisano*, 116 F.3d 625, 632 (2d Cir.), *cert. denied*, 522 U.S. 997 (1997)) (alteration in original).  The Second Circuit "'ha[s] repeatedly cautioned against setting the bar too high' in this context." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).

In assessing plaintiff's claims, the Court must bear in mind that "[i]solated, minor acts or occasional episodes do not warrant relief."  *Brennan*, 192 F.3d at 318; *see also Whidbee*, 223 F.3d at 69 ("Incidents that are 'few in number' and that occur 'over a short period of time' may fail to

demonstrate a hostile work environment") (quoting *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir. 1987)).  What must be shown is that "the incidents were sufficiently continuous and concerted to be considered pervasive, or that a single episode [wa]s severe enough to establish a hostile working environment." *Brennan*, 192 F.3d at 318 (internal quotes omitted).  "A plaintiff must also demonstrate that [he] was subjected to the hostility because of h[is] membership in a protected class." *Kassner*, 496 F.3d at 241.

In the case at bar, I conclude that plaintiff has presented sufficient evidence to give rise to a genuine issue of material fact with respect to his claim that he was subjected to a hostile work environment.  I also find that, viewing the factual record in the light most favorable to plaintiff, the non-moving party, genuine issues of material fact exist as to whether the conduct that created the hostile work environment should be imputed to DOCS, plaintiff's employer.

In *Harris v. Forklift Systems*, 510 U.S. 17, 23 (1993), the Supreme Court provided a nonexhaustive list of factors that the factfinder should consider in determining whether a hostile work environment exists, including:  "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  "These four factors guide the factfinder in making what is ultimately a factual, not a legal, determination." *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 605 (2d Cir. 2006).  Such determinations "are 'especially well-suited for jury determination.'" *Id.* (quoting *Richardson*, 180 F.3d at 437).  Accordingly, even "that the facts are undisputed does not automatically mandate summary judgment; rather, summary judgment is appropriate only where application of the law to those undisputed facts will reasonably support only one ultimate conclusion." *Richardson*, 180 F.3d at 438.

Here, plaintiff has alleged a long series of hostile acts taken against him by his white coworkers beginning in early 2001, and continuing during the pendency of this lawsuit.[3]  I will not repeat all of those alleged incidents here, but they include:  being referred to by a white C.O. as another white C.O.'s "inmate porter"; a white C.O. "grinding" his genital area into plaintiff's buttocks; finding a photo of a black male on plaintiff's time card, with the words, "this is your black ass nigger brother" written on the back of the card; being told by a white C.O., "I'll beat your ass, I will fuck you up"; having one of plaintiff's car tires punctured at work; being referred to as a "fuck monkey" and a "bitch ass nigger"; being subjected to hard shoves and bumps; having a metal object thrown at him by another C.O.; and having a chain wrapped around his neck by a white C.O.  *See* Plaintiff's Aff. (Dkt. #43) ¶¶ 2-14.[4]

---

[3]Defendants contend that one incident (in which a white C.O. allegedly called plaintiff a "house nigger") that is alleged in the complaint to have occurred in January 2001 was stated by plaintiff at his deposition to have actually occurred in January 2000.  Defendants contend that any claim based on that incident is time-barred because it occurred more than 300 days before plaintiff filed his administrative complaint.

As the Supreme Court has explained, however, on a hostile-work-environment claim "[i]t does not matter ... that some of the component acts of the hostile work environment fall outside the statutory time period.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, ___ U.S. ___, 127 S.Ct. 2162, 2180 (2007) (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).  *See also Petrosino v. Bell Atlantic*, 385 F.3d 210, 220 (2d Cir. 2004) ("in the case of a hostile work environment claim, the statute of limitations requires that only one ... harassing act demonstrating the challenged work environment occur within 300 days of filing; once that is shown, a court and jury may consider 'the entire time period of the hostile environment' in determining liability") (quoting *Morgan*, 536 U.S. at 117) (2002).  In any event, even leaving aside that particular incident, plaintiff has alleged enough to go forward on his claims premied on a theory of hostile work environment.

[4]In an December 5, 2001 internal memorandum to Charlie Harvey, the director of the DOCS Office of Diversity Management, Melvin E. Brown, Affirmative Action Administrator II, stated that he had spoken to a number of persons who were involved in or had witnessed some of these incidents, and that Brown "did find that Officer BROWN was racially harassed by staff at Elmira Correctional Facility."  Dkt. #44 Ex. 2.  In a letter to plaintiff dated December 7, 2001,

(continued...)

In support of their motion, defendants argue that many of the incidents relied on by plaintiff simply involved arguments between plaintiff and his coworkers, in which both plaintiff and his coworkers yelled at each other, and were equally culpable.  Defendants also contend that most of these altercations were not accompanied by any racial comments, and they note that some of the incidents occurred outside of the workplace; the "inmate porter" comment, for example, was made at a hockey game attended by plaintiff and some other C.O.s.

In evaluating a claim of hostile work environment, however, one should not attempt to determine whether each discrete incident, by itself, was severe enough to adversely alter the plaintiff's working conditions.  *See E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 799 (10th Cir. 2007) ("the very term 'environment' indicates that allegedly discriminatory incidents should not be examined in isolation") (quoting *Penry v. Federal Home Loan Bank of Topeka*, 155 F.3d 1257, 1262 (10th Cir. 1998), *cert. denied*, 526 U.S. 1039 (1999)); *Mason v. Southern Illinois Univ. at Carbondale*, 233 F.3d 1036, 1045 (7th Cir. 2000) ("Courts should not carve up the incidents of harassment and then separately analyze each incident, by itself, to see if each rises to the level of being severe or pervasive").  The question is whether the incidents, viewed collectively, would permit a jury to find that plaintiff's work environment was hostile.  *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000) ("The issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether–taken together–the reported incidents make out such a case"); *see also Schiano*, 445 F.3d

---

[4](...continued)
Harvey stated that some of plaintiff's allegations of racial harassment had been substantiated. Harvey said that "appropriate action" had been taken with respect to some of the incidents, but he added that, for a number of reasons–such as incidents being "time barred," an inability to identify the individuals involved, and the retirement from DOCS employment of one of the individuals– no action would be taken as to the other incidents.  Dkt. #44 Ex. 3.

at 608 ("Even assuming that ... reasonable jurors may ... disagree about whether these incidents would negatively alter the working conditions of a reasonable employee[,] ... the potential for such disagreement renders summary judgment inappropriate") (internal quotes omitted).

Likewise, not every act of harassment need be overtly motivated by the plaintiff's race (or other protected characteristic) to support a claim of hostile work environment. *See Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir.) ("we underscore that [plaintiff's coworker's] conduct need not have been explicitly sexual or racial in order to create a hostile environment"), *cert. denied*, 528 U.S. 874 (1999). *See also Gregory v. Daly*, 243 F.3d 687, 695 (2d Cir. 2001) ("the sex-based character of much of [plaintiff's supervisor's] behavior permits the inference that the remainder of his harassing conduct was also due to Gregory's sex. And this remains so even though the discriminatory character of some individual incidents might not be evident were they considered in isolation only"). Although *some* of the acts alleged by plaintiff on the part of his coworkers were not accompanied by any racial epithets, there were other incidents of an overtly racial character. Drawing all reasonable inferences in plaintiff's favor, I find that there is enough evidence that plaintiff was harassed on account of his race to give rise to a genuine issue of fact in that regard.[5]

_____

[5]I also note that plaintiff alleges that a white coworker, Quentin Helm, who had apparently befriended plaintiff, was also subjected to taunting and harassment by other white C.O.s because of his amicable relationship with plaintiff. Plaintiff has submitted a written statement signed by Helm detailing some of that harassment–some of which, such as being asked by another C.O., "[W]hy don't you kiss [plaintiff] on his big fat lips?," and whether Helm was "going to cornrow school with [his] homey," *i.e.*, plaintiff–did have racial overtones. Dkt. #44 Ex. 19. Helm also stated that on one occasion, as he was walking past a group of white C.O.s, one of them commented about him, "There's the guy they oughta drag behind a truck," an apparent reference to an infamous 1998 incident in Texas in which three white supremacists murdered a black man by dragging him behind a pickup truck. *Id.*

Although Helm's written statement appears to be inadmissible hearsay, that does not mean that the Court is precluded from considering it on a motion for summary judgment. *See Sadki v. Suny College at Brockport*, 310 F.Supp.2d 506, 517 (W.D.N.Y. 2004) (court deciding a

(continued...)

In addition, the fact that some of the incidents may have occurred outside of plaintiff's workplace does not mean that they are irrelevant to plaintiff's claim or that they could not have contributed to the hostile atmosphere of plaintiff's working environment.  At the very least, they provide context for the incidents that did occur at work, and they tend to show the motivation for the harassing behavior of plaintiff's coworkers.  *See*, *e.g.*, *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 409 (1st Cir. 2002) ("Courts ... do permit evidence of non-workplace conduct to help determine the severity and pervasiveness of the hostility in the workplace as well as to establish that the conduct was motivated by" the plaintiff's membership in a protected category); *Dowd v. United Steelworkers of America*, 253 F.3d 1093, 1102 (8th Cir. 2001) ("The offensive conduct does not necessarily have to transpire at the workplace in order for a juror reasonably to conclude that it created a hostile working environment").

To prevail on his hostile-work-environment claims against DOCS, "plaintiff[] must show not only severe or pervasive harassment but also 'a specific basis ... for imputing the conduct that created the hostile environment to the employer.'"  *Whidbee*, 223 F.3d at 72 (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996)).  Where the harassment was perpetrated by a coworkers and not by a supervisor, the plaintiff must demonstrate that the employer "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it."  *Van Zant*, 80 F.3d at 715 (internal quotation marks omitted).  *See also Richardson*, 180 F.3d at 446 ( "[A]n employer will be liable in negligence for a racially ... hostile work environment created by a victim's co-workers if the employer knows about (or reasonably should know about) that

---

[5](...continued)
motion for summary judgment can consider hearsay upon a showing that admissible evidence will be available at trial).  Even without Helm's statement, however, I find that plaintiff has presented enough admissible evidence to defeat defendants' motion.

harassment but fails to take appropriately remedial action") (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998)); *Snell v. Suffolk County*, 782 F.2d 1094, 1104 (2d Cir. 1986) ("[O]nce an employer has knowledge of a racially combative atmosphere in the workplace, he has a duty to take reasonable steps to eliminate it"). "The question of whether an employer has provided a 'reasonable avenue of complaint' is a question for the jury." *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1181 (2d Cir. 1996)

As stated, I conclude that plaintiff has demonstrated the existence of a genuine issue of fact with respect to plaintiff's hostile-work-environment claim against DOCS, and that DOCS's motion for summary judgment on this claim must be denied. Plaintiff has alleged that he complained on a number of occasions to his supervisors about being harassed by his coworkers, and that although he sometimes got a sympathetic response, virtually nothing was done to attempt to put an end to the harassment.

It is undisputed that plaintiff filed several complaints with the SDHR. He also alleges that he complained several times directly to supervisory officials at Elmira, such as the facility superintendent, the director of the DOCS Office of Diversity Management, a lieutenant, and a sergeant, and that they did nothing to investigate his claims or to take remedial action. At times, according to plaintiff, he got some words of advice or encouragement; he alleges, for instance, that on one occasion, after receiving a negative evaluation that he did not agree with, a supervisor told plaintiff that "[w]hat they're trying to do is give you a bad evaluation ... [to] have a reason to fire you," and that another supervisor once told plaintiff to "[h]ang in there, you're a very good correction officer." Plaintiff's Aff. at 9 ¶ 14(y) and n. 1. According to plaintiff, however, no action was ever taken against his alleged harassers.

In addition, the alleged harassment continued unabated after plaintiff's complaints.  Although "[a]n employer need not prove success in preventing harassing behavior in order to demonstrate that it exercised reasonable care in preventing and correcting ... harassing conduct," the Second Circuit "ha[s] held that if harassment continues after complaints are made, reasonable jurors may disagree about whether an employer's response was adequate." *Whidbee*, 223 F.3d at 72 (quotes and citations omitted); *see also Carter v. Chrysler Corp.*, 173 F.3d 693, 702 (8th Cir. 1999) ("Factors in assessing the reasonableness of remedial measures may include ... whether or not the measures ended the harassment") (internal citations omitted))..  In *Whidbee*, for example, the court, though stating that "[t]he reasonableness of [the employer's] response [to the plaintiff's complaints wa]s a close call," concluded that "reasonable jurors could disagree as to whether [its] response was effective and prompt," and that summary judgment for the employer was therefore inappropriate.  *Id.* at 72, 73. I reach the same conclusion here.

## IX. Title VII Retaliation Claim

For much the same reasons, I also find that summary judgment is inappropriate as to plaintiff's retaliation claims.  Title VII forbids any employer from "discriminat[ing] against any of [its] employees ... because he has made a charge, testified, assisted, or participated in any manner in a [Title VII] investigation, proceeding, or hearing."   42 U.S.C. § 2000e-3(a).

Retaliation claims under Title VII are evaluated under a three-step burden-shifting analysis, similar to that used in evaluating allegations of disparate treatment.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973); *Reed*, 95 F.3d at 1178.  *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998).  First, the plaintiff must establish a *prima facie* case, by showing:  "(1) participation in a protected activity; (2) that the defendant knew of the protected

activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d Cir. 2001).

If the plaintiff meets that initial burden, "a presumption of retaliation arises." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). Under the second step of the burden-shifting analysis, the onus then falls on the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.*; *Quinn*, 159 F.3d at 768. At the third step, after the employer has presented such proof, "the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action." *Jute*, 420 F.3d at 173 (citing *Fields v. New York State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 120-21 (2d Cir. 1997)).

In the instant case, defendants have conceded, for purposes of their motion, that plaintiff has met the first three elements of his *prima facie* case. They contend, however, that plaintiff has not presented any evidence of a causal link between any protected activity on his part and an adverse employment action taken against him.

In support of that argument, however, defendants focus exclusively on certain actions taken by plaintiff's supervisors–specifically, the notices of discipline issued against him in 2002, and a requirement that he undergo a medical examination before returning to work in January 2002, following a leave of absence that plaintiff had taken in December 2001. Defendants contend that there is no evidence that those actions were taken because of any retaliatory motive.

A Title VII plaintiff need not rely on formal job actions to support a retaliation claim, however. "Title VII's substantive provision and its anti-retaliation provision are not coterminous. The scope of the anti-retaliation provision extends beyond workplace-related or employment-related

retaliatory acts and harm." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). What matters most is whether "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotes omitted).

In the case at bar, plaintiff bases his retaliation claim, in part, on the disciplinary actions mentioned above, but he also alleges that he was retaliated against in other ways as well. In particular, plaintiff alleges that after he complained to his supervisors about racial harassment, and after he filed charges with the SDHR, the harassment "severely escalated and involved threats of physical harm and termination." Plaintiff's Aff. ¶ 11. Some of those acts, such as defendant C.O. Danny Leonard's alleged threat to "beat [plaintiff's] ass," are outlined above.[6] Plaintiff also alleges that several C.O.s got inmates to file false reports against plaintiff in exchange for food from outside the facility, in violation of prison regulations, *id.* ¶ 14(I), and that they gave plaintiff's telephone number and address to an inmate, also in violation of regulations. *Id.* ¶ 14(e).

There is also evidence that plaintiff's coworkers were motivated by retaliatory animus. Plaintiff alleges, for instance, that on one occasion, defendant C.O. William Beam said to another C.O., "don't talk to [plaintiff]. He might sue you." *Id.* ¶ 14(p). Plaintiff also alleges that Beam said

_____

[6]Defendants do not argue that plaintiff cannot base his hostile-work-environment and retaliation claims on the same incidents, and I see no reason why plaintiff cannot premise both claims on at least some of the same acts. Certainly it would be unrealistic to insist that a plaintiff categorize each alleged act as motivated exclusively either by discriminatory or retaliatory animus. *See*, *e.g.*, *Kerr-Selgas v. American Airlines, Inc.*, 69 F.3d 1205, 1211 (1st Cir. 1995) (noting that jury found that defendants' employment decisions were motivated both by unlawful discrimination and by unlawful retaliation); *Lacy v. National R.R. Passenger Corp.*, 507 F.Supp.2d 438, 446 (D.Del. 2007) (noting that plaintiff's "allegations of retaliation ... cover the same incidents as her hostile work environment claim"); *Malarkey v. Texaco, Inc.*, 794 F.Supp. 1237, 1246 (S.D.N.Y. 1992), *aff'd*, 983 F.2d 1204 (noting that proof of the same events was necessary to establish both discrimination and retaliation claims).

to him, "You heard me.  You went and signed some papers against me.  I heard you're suing me and I'm not scared.  Fuck you.  I am not scared of you." *Id.*  On another occasion, defendant C.O. Danny Leonard allegedly told plaintiff, "If the heat is too hot, bid out," which could be interpreted to mean that instead of filing complaints about his coworkers' harassment, plaintiff should seek a transfer or find a job elsewhere.[7]  *Id.* ¶ 14(q).  *See Gregory*, 243 F.3d at 701 (plaintiff's allegation "that the [hostile work] environment significantly worsened after she complained and filed suit," and that her supervisor told her that she should "get on board or quit," sufficed to support inference of retaliatory animus).

As with his Title VII hostile-work-environment claim, plaintiff must also present an evidentiary basis for imposing liability on DOCS for his coworkers' retaliatory harassment.  In that regard, the Court of Appeals for the Second Circuit has held that "unchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy the second prong of the retaliation *prima facie* case."  *Richardson*, 180 F.3d at 446.  The court in *Richardson* went on to state that "[ j]ust as an employer will be liable in negligence for a racially or sexually hostile work environment created by a victim's co-workers if the employer knows about (or reasonably should know about) that harassment but fails to take appropriately remedial action, so too will an employer be held accountable for allowing retaliatory co-worker harassment to occur if it knows about that harassment but fails to act to stop it."  *Id.* (citations omitted).  That holding is in line with the majority of circuits that have addressed the issue of employer liability for coworker retaliatory harassment.  *See Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 345 (6th Cir. 2008) (adopting the position taken by "[t]he majority of our sister circuits ... that Title VII protects against

---

[7]In fact, plaintiff alleges that he did at one point request a transfer away from his harassers, which was not granted.  Dkt. #43 ¶ 14(a); Dkt. #44 Ex. 17.

coworker retaliatory harassment that is known to but not restrained by the employer") (citing cases,

including *Richardson*).

 For essentially the same reasons stated with respect to plaintiff's hostile-work-environment

claim, I find that there are genuine issues of material fact with respect to plaintiff's Title VII

retaliation claim against DOCS.  Plaintiff alleges that he complained several times about his

coworkers' retaliatory harassment of him, and that nothing was done to remedy the problem.  *See*

*Richardson*, 180 F.3d at 447 (where record showed that "DOCS officials did little to improve the

situation" involving abusive treatment of plaintiff by her coworkers after she had filed Title VII

lawsuit, "DOCS's motion for summary judgment should not have been granted").


## CONCLUSION


 Defendants' motion for summary judgment (Dkt. #32) is granted in part and denied in part.

Plaintiff's first and second causes of action under Title VII are dismissed as to the individual

defendants.  Plaintiff's third through eleventh causes of action are dismissed in their entirety, except

to the extent that they assert claims against the individual defendants under 42 U.S.C. § 1981.  All

of plaintiff's claims alleging constructive discharge are dismissed.  All of plaintiff's claims against

Elmira Correctional Facility, the New York State Comptroller's Office, and the New York State

Department of Civil Service, are also dismissed.  In all other respects, defendants' motion is denied.

 IT IS SO ORDERED.

_____

DAVID G. LARIMER

United States District Judge

Dated: Rochester, New York
  October 29, 2008.